54 F.3d 438
 63 USLW 2788, 130 Lab.Cas. P 33,236,
2 Wage & Hour Cas.2d (BNA) 1217
 Gerald R. MUELLER, James A. Andreshak, and Frederick
Moeller, on behalf of themselves and all other
employees of the State of Wisconsin
similarly situated, et al.,
Plaintiffs-Appellants,
v.
Robert B. REICH, Secretary of Labor, and United States
Department of Labor, Defendants-Appellants,
and
Charles H. THOMPSON, Secretary, Wisconsin Department of
Transportation; Wisconsin Department of
Transportation; et al., Defendants-Appellees.
 Nos. 94-3262, 94-3263.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 5, 1995.
Decided May 15, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied July 12, 1995.
 
 Michael E. Banks (argued), Kelly & Haus, Madison, WI, for Gerald R. Mueller, James A. Andreshak, Frederick Moeller, David Tamblyn, David Dahlk, Melvin Sensenbrenner, Richard Nelson, Roger Bohn, David Buschkopf, Curtis Paulson, Thomas M. Stemrich, Terry D. Cook, Gerard Swim, Robert Grosch, Vernon Carlson, State Engineering Ass'n.
 Jennifer Sloan Lattis, Asst. Atty. Gen., Wisconsin Dept. of Justice, Richard Briles Moriarty (argued), Wisconsin Dept. of Justice, Madison, WI, for James Klauser, Carroll D. Besadny, Gerald Whitburn, Carol N. Skornicka, Jon E. Litscher, Dept. of Health and Social Services, Dept. of Employment Relations, Dept. of Transp., Dept. of Admin., Dept. of Industry, Labor and Human Relations, Dept. of Health & Human Services, Charles H. Thompson, George Meyer, Public Service Com'n, George K. Steil, Sr., Bd. of Regents of University of Wisconsin System, State of Wis.
 Paul Frieden (argued), Dept. of Labor, Office of Sol., Washington, DC, for Robert B. Reich, Dept. of Labor.
 Christine O. Gregoire, Office of Atty. Gen. of Wash., Olympia, WA, for State of Wash., amicus curiae.
 Bruce F. Ehlke, Aaron N. Halstead, Shneidman, Myers, Dowling & Blumenfield, Madison, WI, for American Federation of State, County and Mun. Employees, AFL-CIO, District Council 40.
 Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.
 POSNER, Chief Judge.
 
 
 1
 This is a class action on behalf of certain engineers employed by the State of Wisconsin, seeking overtime pay to which the plaintiffs claim to be entitled by the Fair Labor Standards Act, 29 U.S.C. Secs. 201 et seq. The Act exempts bona fide executive, administrative, and professional employees, Sec. 213(a)(1); and the state claims, and the district court agreed, that the engineers fall within the exemption. Mueller v. Thompson, 858 F.Supp. 885 (W.D.Wis.1994). The class is defined as all state-employed engineers who have been classified as exempt.
 
 
 2
 The Act does not define the term "executive, administrative, and professional employees," but instead tells the Department of Labor to define it "from time to time by regulations." Sec. 213(a)(1). The Department has done this in a pair of regulations one of which--the only one we need consider--is known as the "salary basis" regulation. 29 C.F.R. Sec. 541.118. This regulation defines executive, administrative, and professional employees as employees who receive a salary as distinct from an hourly wage--provided (so far as bears on this case) that their pay may not be docked for an absence from work of less than one day and that they are not subject to having less than a week's pay docked for a disciplinary infraction that is not the breach of a major safety regulation. The engineers who make up the plaintiff class are subject to both types of sanction. This may seem to make their case a slam dunk. But in 1992 the Department of Labor created an exception, limited to public employees, to the first proviso and in consequence a public employer may now, without forfeiting its exemption from the Fair Labor Standards Act, dock an employee's pay for missing less than a day's work. 29 C.F.R. Sec. 541.5d. The Department considered whether likewise to make an exception for public employees to the limitation on disciplinary sanctions, but it decided not to. The engineers challenge the new regulation, claiming that the Department is not authorized to treat public employees differently from private ones, but they defend the Department's decision not to go further and differentiate between public and private employers with regard to disciplinary measures. The state, though otherwise pleased with the new regulation, attacks that decision. The district judge rejected the engineers' challenge to the Department but accepted the state's. So the state won the case.
 
 
 3
 The Department of Labor has managed to inject huge confusion into our appellate review of the district court's decision. The engineers, because they wanted to knock out the new regulation, which had been promulgated by the Department of Labor, named the Department as an additional defendant along with the state. They did not have to do this. The relief they seek is the payment of overtime compensation by the state. They ask for nothing from the Department of Labor or any other federal entity. The regulation on which the state relies is an obstacle--that is true. But they could challenge its validity without naming the Department as a defendant. It is utterly commonplace for the validity of regulations and even statutes to be challenged in private litigation (which from the standpoint of the federal government a suit by private individuals against a state is). See, e.g. Plaut v. Spendthrift Farm, Inc., --- U.S. ----, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). That is why, for example, a district court is required to certify a challenge to the constitutionality of a state or federal statute to the state or federal attorney general, respectively, and allow him an opportunity to intervene and defend the statute. 28 U.S.C. Sec. 2403; Max M. v. New Trier High School District No. 203, 859 F.2d 1297, 1300 (7th Cir.1988). We know of no similar provision requiring a party who is challenging the validity of a federal regulation in private litigation to name the agency that promulgated or enforces the regulation as a defendant.
 
 
 4
 At all events, the district judge held the regulation valid and also dismissed the suit, so that the engineers obtained no relief of any sort against the Department. Yet the Department filed a cross-appeal. As the Supreme Court has held, California v. Rooney, 483 U.S. 307, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987) (per curiam), and we tirelessly remind the bar, e.g., Grinnell Mutual Reinsurance Co. v. Reinke, 43 F.3d 1152, 1154 (7th Cir.1995); Warner/Elektra/Atlantic Corp. v. County of DuPage, 991 F.2d 1280, 1282-83 (7th Cir.1993); Abbs v. Sullivan, 963 F.2d 918, 924-25 (7th Cir.1992), and would have expected the agencies of the federal government, at least, to have learned by now, a party is not permitted to appeal or cross-appeal unless it wants the judgment of the lower court modified in some way.
 
 
 5
 The Department's reason for wanting to cross-appeal is that it is distressed by the district court's ruling that the new regulation, though valid as far as it goes, should have gone even further and exempted public employees from the disciplinary limitation in the salary-based regulation as well as from the prohibition against pay deductions for missing part of a day's work. That ruling is important to the engineers' suit against the state; it doomed the suit. But it did not affect the judgment in the suit against the Department, a judgment of dismissal. A defendant cannot appeal the dismissal of the suit against him on the ground that, in dismissing the suit, the district court said something that may hurt the defendant in a future case. E.g., California v. Rooney, supra, 483 U.S. at 311, 107 S.Ct. at 2854; Warner/Elektra/Atlantic Corp. v. County of DuPage, supra, 991 F.2d at 1282-83. That is precisely the ground of the Department's appeal here, as its lawyer acknowledged at the argument. We add that the hurt would be small here because district court decisions are not authoritative as precedents, even at the district court level. Colby v. J.C. Penney Co., 811 F.2d 1119, 1124 (7th Cir.1987).
 
 
 6
 So the cross-appeal was improper, and must be dismissed. What makes it confusing rather than merely superfluous is that the Department, though it manages to avoid saying so, wants the plaintiffs to win their suit against the state. That is, the would-be cross-appellant wants the appellants to win rather than, as is almost always true, to lose. To come within the exemption for executive, administrative, and professional employees, the state must, in the Department's view--and we do not understand any other party to these proceedings to disagree--comply with all parts of the salary-basis regulation (to the extent the regulation is valid, of course), thus including the part limiting discipline; and the state did not comply with that part. But a party cannot appeal from a judgment in its favor merely because it would like the unsuccessful plaintiff to prevail against someone else. Moy v. Cowen, 958 F.2d 168 (7th Cir.1992) (per curiam).
 
 
 7
 The cross-appeal is all the more weird because the Department of Labor is empowered to sue to enforce the Fair Labor Standards Act on behalf of employees aggrieved by violations of the Act and specifically to recover, as their agent, unpaid minimum wages or overtime compensation. 29 U.S.C. Sec. 216(c); see, e.g., Tony & Susan Alamo Foundation v. Secretary of Labor, 471 U.S. 290, 293-94, 105 S.Ct. 1953, 1957-58, 85 L.Ed.2d 278 (1985). Indeed, the Act clearly envisions the Department as the primary enforcer. 29 U.S.C. Sec. 217; Walton v. United Consumers Club, Inc., 786 F.2d 303, 306-07 (7th Cir.1986); EEOC v. G-K-G, Inc., 39 F.3d 740, 745 (7th Cir.1994) (dictum). Since the Department wanted these employees to win, it could have sued on their behalf, and it should have been realigned with them as a plaintiff. This realignment would have made clear that the Department could not file a cross-appeal in this case.
 
 
 8
 So let us set the cross-appeal to one side and turn to the merits of the engineers' suit against the state.
 
 
 9
 The state can prevail only if the current regulation, which is to say 29 C.F.R. Sec. 541.118 as amended by 29 C.F.R. Sec. 541.5d, is valid as far as it goes but should have gone further, that is, should have extended the exemption for public employees to the provision on discipline. We think the regulation is valid, period; and therefore that the engineers must win since the state, it is conceded, did not comply fully and had to do so (provided the regulation is valid) to be entitled to the exemption.
 
 
 10
 When Congress explicitly delegates responsibility for completing a statutory scheme by defining key terms, here terms on which exemption from the statute's requirements turns, without supplying criteria for the exercise of the delegated responsibility, the scope of judicial review is extremely limited. Judicial review of administrative action typically involves comparing the action with the criteria set forth by the legislature to guide the agency. If there are no criteria, about all the court can do is determine whether the agency's action is rationally related to the objectives of the statute containing the delegation. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984); Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 647-52, 110 S.Ct. 2668, 2676-79, 110 L.Ed.2d 579 (1990); Sullivan v. Everhardt, 494 U.S. 83, 88-89, 110 S.Ct. 960, 963-64, 108 L.Ed.2d 72 (1990); Madison Gas & Electric Co. v. EPA, 25 F.3d 526, 529 (7th Cir.1994). That liberal test is easily passed here, at least with respect to the deduction for absences from work of less than a day.
 
 
 11
 Remember that the issue is entitlement to overtime pay (at the statutory rate of 1.5 times regular pay). There is little purpose in paying overtime if the express or implied contract of employment does not fix specific hours of work, the employee being expected to do as much work (within reason) as necessary to carry out his responsibilities rather than to work exactly the same number of hours day after day. If the employer docks the employee's pay for an absence of a few hours on a particular day, the implication is that the employee really is expected to work the same number of hours every day, implying in turn that he really is an hourly rather than a salaried worker and that his salaried status is an evasion of the statute. That is the logic behind the original provision governing absences of less than a full day. But when public employees were placed under the Fair Labor Standards Act (effectively in 1985, when the Supreme Court overruled the National League of Cities decision in Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)), the Department of Labor discovered that states and municipalities, in accordance with the principle of "public accountability," insist that public employees, even if from a functional standpoint they are executive, administrative, or professional employees rather than hourly-wage employees, must account for every hour away from work, either by using accrued leave or if they have none by losing a pro rata portion of their salary. Americans are suspicious of their civil servants, and do not trust those servants to work as many hours as necessary to do the job. They demand "public accountability"--for every minute, or at least every hour. The interaction between this principle, which is deeply embedded in the American political culture, and the original salary-basis regulation, forbidding pay deductions for absences from work of less than a full day, was to bring under the Act workers who in no realistic sense were hourly-wage employees and were therefore outside the Act's intended scope. Hence the new regulation. We cannot say that it is not rationally related to the objectives of the Act. And we can find nothing in the Act's provision on delegation or elsewhere to suggest that the Department of Labor is forbidden to make rational distinctions between public and private employees.
 
 
 12
 In drafting the new regulation, the Department considered but rejected making a further exception that would permit public employers to dock their employees less than a full week's pay as a penalty for a violation of work rules or other infraction, even if it is not a major safety infraction--for which so light a penalty would usually be inappropriate anyway. Neither the principle of public accountability, nor any other principle of public administration that has been drawn to our attention, makes it imperative that public employers have this power with respect to their executive, administrative, and professional employees. What is true is that the bar against this range of penalties reduces the employer's disciplinary flexibility, but this is as true for private as for public employers. So far as we know, there is nothing peculiar to the culture or customs or conditions of public employment that necessitates these penalties. We recognize that a higher percentage of public than of private employees have tenure and that it is difficult (quite apart from the rather silly constitutional bar to firing a tenured public employee without giving him due process of law) to fire a public employee; and this makes alternative sanctions more important. But all the challenged rule prevents is suspensions without pay for less than a week, and it is entirely unclear why that should be thought a crippling blow to effective public administration.
 
 
 13
 Because the rule barring such suspensions does not impose an insuperable obstacle to states' bringing their executive, administrative, and professional employees within the exemption--all the states have to do is to delete this form of discipline from their arsenals of disciplinary remedies--we do not think there is merit to the district judge's suggestion that to subject the states to the rule violates the constitutional guarantee to each state of a republican form of government. U.S. Const. art. IV, Sec. 4. How the clause relates to the employment of engineers is in any event obscure. Since we do not think the Department of Labor's rule inimical to the guarantee clause, we need not speculate on whether the Supreme Court continues to believe that the clause does not create any legally enforceable rights. Compare Baker v. Carr, 369 U.S. 186, 218-26, 82 S.Ct. 691, 710-15, 7 L.Ed.2d 663 (1962), with New York v. United States, 505 U.S. 144, ---- - ----, 112 S.Ct. 2408, 2432-33, 120 L.Ed.2d 120 (1992).
 
 
 14
 It might be possible to question the rationality of the rule with respect to all employees, private as well as public, although we do not understand the state to be attempting so broad a challenge. How, it might be asked, does the structure of discipline affect the character of employees as hourly or salaried workers? The only answer that has been suggested or that occurs to us is that if an employer measures out discipline in the form of fractions of a weekly salary, the implication is that the employee is really being paid on an hourly basis. This is pretty feeble. But apart from the extreme narrowness of the scope of judicial review of the Department's regulation, we do not understand the state to be challenging the disciplinary rule in toto. It is merely challenging the Department's refusal to carve out an exception for public employers. That challenge must fail because the state has not shown what is so special about state employment that makes greater disciplinary flexibility than is permitted to the private sector indispensable to the effective functioning of state government.
 
 
 15
 The plaintiffs are not exempt from the Fair Labor Standards Act, and the judgment of the district court dismissing their suit must therefore be REVERSED and the case REMANDED to that court for further proceedings in conformity with this opinion. The cross-appeal is DISMISSED.